1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

7

LIBERTY MUTUAL INSURANCE
GROUP,

Plaintiff,

v.

PANELIZED STRUCTURES, INC., et
al.,

Defendants.

2:10-CV-1951 JCM (PAL)

8
9
10
11
12
13
14
15

**ORDER**

16      Presently before the court is plaintiff Liberty Mutual's motion to dismiss the defendant

17  Panelized Structures' counterclaim for failure to state a claim for which relief may be granted.  (Doc.

18  #25).  Defendant filed an opposition (doc. #30) and a supplemental opposition (doc. #33).  Plaintiff

19  filed a reply.  (Doc. #34).

20      Also before the court is third-party defendant Arizona Labor Force, Inc.'s ("ALFI") motion

21  to dismiss the third-party complaint.  (Doc. # 29).  Third-party plaintiff Panelized Structures filed

22  an opposition.  (Doc. # 37).  Third-party defendant filed a reply.  (Doc. #38).

23  **I.  Background**

24      Plaintiff Liberty Mutual insured a temporary labor company, ALFI, for injuries to its

25  employees, and defendant Panelized Structures contracted with ALFI to provide a temporary

26  employee for construction purposes.  Under state law, Panelized Structures was required to carry

27  workers' compensation insurance for its employees.  ALFI for its part, expressly told customers the

28

**James C. Mahan**
**U.S. District Judge**

labor contract would provide the required insurance and included the cost of the premium in the contract price.   An employee subsequently was injured during the course of his temporary employment with Panelized Structures and received insurance benefits from Liberty Mutual. Thereafter, Liberty Mutual began subrogation proceedings against the defendant to recover those payments.

The procedural history is as follows.   Plaintiff Liberty Mutual initiated subrogation proceedings against defendant Panelized Structures.   Panelized Structures then counterclaimed against the plaintiff, and thereafter Liberty Mutual filed a motion to dismiss the counterclaim. Panelized Structures, also a third-party plaintiff, issued a third-party complaint against third-party defendant ALFI, who has also filed a motion to dismiss.

A federal court sitting in diversity jurisdiction is required to apply state substantive law and federal procedural law.  *Freund v. Nycomed Amersam*, 347 F.3d 752, 761 (9th Cir. 2003) (*quoting Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)).  Additionally, under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint when it fails to state a claim for which relief may be granted.

## II.  Plaintiff Liberty Mutual's Motion to Dismiss (doc. #25)

The counterclaim alleges that plaintiff Liberty Mutual breached its contractual and fiduciary duties when it commenced subrogation actions against the defendant/counter-claimant, Panelized Structures.   At issue is which party carries the ultimate responsibility for payment to an injured worker under a required workers' compensation policy.

In the motion to dismiss (doc. #25), Liberty Mutual asserts that there must be a direct contractual relationship between the parties to support a claim for bad faith.   Without such a relationship, Panelized Structures lacks standing to bring a bad faith claim.   Panelized Structures responds that the court should convert the motion to dismiss to a motion for summary judgment because resolution of the motion requires the court to consider evidence extraneous to the complaint. Alternatively, Panelized Structures requests this court stay consideration of the motion pending discovery to determine first if the defendant is an "insured" under the insurance contract.  The court

**James C. Mahan**
**U.S. District Judge**

- 2 -

1  declines to stay resolution of the pending motions, finding it appropriate to now consider each on

2  the merits.

3  A.  Conversion of Motion to Dismiss to Motion for Summary Judgment

4         Federal Rule of Civil Procedure 12(d) permits a court to convert a motion under Rule

5  12(b)(6) to a motion for summary judgment when "matters outside the pleadings are presented to

6  and not excluded by the court." Here, Panelized Structures claims Liberty Mutual's reference to the

7  insurance contract between itself and ALFI is extraneous evidence used to argue that Panelized

8  Structures is not an "insured" under the contract.  Thus, Panelized Structures asserts the motion to

9  dismiss should be converted to a motion for summary judgment.

10        Federal procedural law holds that "documents whose contents are alleged in a complaint and

11 whose authenticity no party questions, but which are not physically attached to the pleading, may be

12 considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454

13 (9th Cir. 1994) (specifically holding that such considerations do not convert a motion to dismiss into

14 a motion for summary judgment), *overruled* on other grounds by *Galbraith v. County of Santa Clara*,

15 307 F.3d 1119 (9th Cir. 2002).

16        Here, the court finds that consideration of the insurance contract does not convert the motion

17 into a motion for summary judgment.  The counterclaim itself refers to the contract (doc. #20 pg.11)

18 as does the motion to dismiss (doc. #25).  The insurance contract is not extrinsic evidence as it is the

19 legal basis for the claims between the parties.  Accordingly, the court treats the motion as a motion

20 to dismiss and applies the relevant standards.

21 B.  Dismissal under Federal Rule of Civil Procedure 12(b)(6)

22        Nevada law has not squarely addressed whether a third-party, claiming benefits, who falls

23 within an insurance policy's definition of an "insured," has a contractual relationship with the insurer

24 such that the third-party may allege claims of bad faith arising from that relationship.  *Bergerud v.*

25 *Progressive Casualty Ins.*, 453 F. Supp. 2d 1241, 1246 (D. Nev. 2006).  Without guidance from the

26 state, a federal court must sit in the place of the highest state court and use its best judgment to

27 predict the preferred resolution of the issue using existing state law and other sources.  *Strother v.*

28

**James C. Mahan**
**U.S. District Judge**

1   *S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir. 1996).

2       Liberty Mutual asserts this case should be dismissed because third-party claimants do not

3   have standing to claim bad faith when no contractual relationship exists between the parties. *Gunny*

4   *v. Allstate Ins. Co.*, 108 Nev. 344 (1992); *see also United Fire Ins. Co. v. McClelland*, 105 Nev. 504

5   (1989) (requiring a contractual relationship in Nevada to assert a bad faith claim). *Gunny* involved

6   a young man in a boating accident who sued his father's insurance company for bad faith. The case

7   was dismissed because the plaintiff did not present any evidence that he was a specific intended

8   beneficiary or that he substantially relied on the contractual relationship. *Gunny*, 108 Nev. at 345.

9   Similarly in *McClelland*, the plaintiff was not named on the insurance policy but was her husband's

10  dependent. 105 Nev. at 504. The Nevada Supreme Court held a third-party beneficiary does not

11  have a contractual relationship to support a claim of bad faith when the claim is based on the denial

12  of another's benefits. *Id*. at 511-12.

13      In support of its position, the Court in *McClelland* adopted the reasoning of *Hatchwell v,*

14  *Blue Shield of California*, 198 Cal. App. 3d 1027 (1988). A careful reading of *Hatchwell* yields a

15  subtle distinction between bad faith claims where (1) the insurer denies a third-party's claim for

16  benefits and (2) when the insurer denies another party's claim to benefits which will ultimately be

17  paid to the third-party. The court held that an express beneficiary, or a third-party who is an

18  "insured" person under the terms of the policy, has standing if "she is the claimant whose benefits

19  are wrongfully withheld." *Bergerud*, 453 F. Supp. 2d at 1248. Additionally, both *Gunny* and

20  *McClelland* indicate that a "third-party claimant who is a specific intended beneficiary of an

21  insurance policy might have a contractual relationship to support a bad faith claim." *Id*. at 1247.

22  The court interprets this Nevada Supreme Court precedent as endorsing bad faith claims of a third-

23  party "insured," where the third-party claims benefits as the intended beneficiary.

24      Here, Panelized Structures has claimed benefits for itself and not for either the injured

25  employee or ALFI. Specifically, Panelized Structures has claimed as an "insured" beneficiary, that

26  Liberty Mutual was under a duty to never bring subrogation proceedings against it. This issue has

27  not been addressed by the Nevada Supreme Court.

28

James C. Mahan
U.S. District Judge

Panelized Structures pled in its counterclaim that it was an "insured" under the insurance contract. Accordingly, by pleading that it is an implied "insured" beneficiary, Panelized Structures has alleged a claim for which relief may be granted. Nevada law requires good faith and fair dealing on the part of the insurer in dealing with its insured parties. *See Powers v. United Services Auto. Ass'n*, 114 Nev. 690, 700-01 (1998). The court declines to resolve the issue at this juncture, as a motion to dismiss concerns itself with the pleading standard rather than the substance of the claims alleged. The court finds that the claim has been adequately pled.

**III.  ALFI's Motion to Dismiss (doc. #29)**

Third-party plaintiff Panelized Structures claims that ALFI intentionally, or in the alternative, negligently, misrepresented that it carried workers' compensation insurance for the protection of the temporary employees of Panelized Structures. The third-party complaint also alleges breach of contract, claiming that Panelized Structures was covered by the insurance contract between Liberty Mutual and ALFI, which Liberty Mutual breached by refusing to protect Panelized Structures from a personal injury suit by the temporary employee and also initiating subrogation proceedings to recover the benefits paid to the employee. Panelized Structures then filed suit against ALFI to recover for the intentional and negligent misrepresentations and breach of contract. ALFI claims the motion to dismiss will likely become moot after consideration of the first motion to dismiss (doc. #25). The court agrees.

The insurance contract is the controlling issue in this case. Any fault by ALFI necessarily requires determining if the insurance contract is ambiguous. Panelized Structures correctly asserts that any ambiguity in the insurance contract must be resolved in favor of the insured and against the insurer. *See Safeco Ins. Co. v. Capri*, 101 Nev. 429 (1985). Thus, the controlling question is whether any ambiguity shows that Panelized Structures is an implied insured. If answered in the affirmative, the third-party complaint against ALFI becomes moot. If not, Panelized Structures can move forward with its complaint.

However, Panelized Structures already acknowledged that ALFI attempted and intended to provide workers' compensation insurance to Panelized Structures. By its own admission, ALFI

**James C. Mahan**
**U.S. District Judge**

1    obtained the insurance protection for the benefit of its future customers and had a reasonable

2    expectation and interpretation of the insurance contract. (Doc. #30).  Panelized Structures cannot

3    now claim either intentional or negligent misrepresentation.  Thus, Panelized Structures' first two

4    claims are rendered moot upon the above disposition of Liberty Mutual's motion to dismiss.  (Doc.

5    #25).

6           Accordingly,

7           IT IS HEREBY ORDERED ADJUDGED AND DECREED that plaintiff Liberty Mutual

8    Insurance Group's motion to dismiss (doc. #25) be, and the same hereby is, DENIED.

9           IT IS FURTHER ORDERED ADJUDGED AND DECREED that third-party defendant

10   Arizona Labor Force, Inc.'s motion to dismiss the first and second claims for relief in the third-party

11   complaint (doc. #29) be, and hereby is, GRANTED.

12          DATED June 7, 2011.

13

14          _____

15          **UNITED STATES DISTRICT JUDGE**

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**