UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE GROUP,<br><br>                              Plaintiff,<br><br>     v.<br><br>PANELIZED STRUCTURES, INC., ET AL.,<br><br>                              Defendants. | Case No. 2:10-cv-01951-MMD-PAL<br><br>ORDER<br><br>(Plf.'s Motion for Summary Judgment – dkt. no.  129) |
| PANELIZED STRUCTURES, INC.,<br><br>                              Counterclaimant,<br>     v.<br><br>LIBERTY MUTUAL INSURANCE GROUP,<br>LM INSURANCE CORPORATION, and<br>LIBERTY MUTUAL INSURANCE<br>GROUP/BOSTON,<br><br>                              Counterdefendants. | |
| PANELIZED STRUCTURES, INC.,<br><br>                              Third-Party Plaintiff,<br>     v.<br><br>ARIZONA LABOR FORCE, INC., an<br>Arizona corporation, dba ALLIED FORCES<br>TEMPORARY SERVICES,<br><br>                              Third-Party Defendant. | |

I.      **SUMMARY**

Before the Court is Plaintiff LM Insurance Corporation's Motion for Summary Judgment. (Dkt. no. 129.)  Plaintiff seeks to enforce alleged contractual indemnification and equitable subrogation rights stemming from a worker's compensation insurance policy and recover the amount of benefits it paid to a temporary worker who was injured

while working for Defendant Panelized Structures, Inc.   For the reasons discussed below, the Motion is denied.

## II.   BACKGROUND

This case arises out of a workers' compensation insurance claim.   The facts are undisputed.

### A.   The Insurance Policy

Plaintiff is the insurer on a workers' compensation policy (the "Policy") held by Arizona Labor Force, Inc. ("ALFI").   The Policy provides that, whenever insurance benefits paid to a covered injured employee, Plaintiff "has [AFLI's] rights, and the rights of persons entitled to the benefits of [the policy], to recover . . . payments from anyone liable for the injury."   In this manner, Plaintiff could stand in the place of ALFI or of the injured employee to collect its insurance payments from any liable third party.

### B.   The Customer Agreement

In September 2004, ALFI entered into a Customer Agreement (the "Agreement") with Defendant Panelized Structures, Inc. ("PSI") to provide temporary workers.  Under the Agreement, ALFI retained the duties to pay its temporary workers' salary and benefits, as well as provide workers' compensation insurance coverage for them while they were on contract to work for PSI.  In return, PSI was to pay ALFI the contract price. The Agreement established the parties' respective contractual responsibilities with respect to these workers and the work performed under PSI's supervision and control:

> [ALFI] does not insure [PSI] for damages to [PSI] owned vehicles, machinery, or materials to which [ALFI] employees may be assigned. [PSI] indemnifies [ALFI] against such claims, as well as against bodily injury resulting from such incidents.

("Indemnification Provision I") (Dkt. no. 129-1.)   The Agreement also outlined PSI's duties with respect to the conditions under which ALFI's workers would labor:

> [PSI] has a responsibility to observe all laws and ordinances relating to safety and health. It also agrees to provide whatever safety devices and equipment are necessary for the work to be performed.  [PSI] agrees to indemnify [ALFI] for any claims, penalties, or damages resulting from the Company's violations of OSHA regulations, or other similar state laws with

2

respect to the workplace or the equipment to which it assigns [ALFI's] employees.

("Indemnification Provision II") (Dkt. no. 129-1.)

### C.    The Accident and Procedural Background

Thereafter, Thomas Novick, an ALFI employee, was seriously injured while working for PSI.   Mr. Novick filed a claim with Plaintiff and collected the insurance payments he was entitled to under ALFI's worker's compensation policy.  As a result, in 2006, Liberty Mutual Insurance Group ("Liberty Mutual"), Plaintiff's parent corporation,[1] filed suit in state district court in Clark County, Nevada, asserting tort statutory subrogation rights pursuant to NRS 616C.215 to recover the worker's compensation benefits paid to Mr. Novick. That case was consolidated with Mr. Novick's negligence action filed against PSI.  Eventually, a jury decided the consolidated cases in Mr. Novick and Liberty Mutual's favor.[2]

In the meantime, Liberty Mutual additionally brought this action for contractual indemnity and equitable subrogation to assert ALFI's rights against PSI to recover the amount paid to Mr. Novick.  However, before this case could also be consolidated with the related action, Defendant removed it to this Court.   Plaintiff brought this Motion

///

///

///

---

[1]In the course of this litigation, it was found that Liberty Mutual inadvertently brought and prosecuted the action due to its mistake in determining ALFI's insurer. It was eventually determined that LM Insurance Corporation, a wholly owned subsidiary of Liberty Mutual, was actually the party to the insurance contract.  The Court granted the Motion for Substitution, and LM Insurance Corporation ratified all the actions taken by Liberty Mutual.

[2]Judgment Upon the Verdict, *Liberty Mutual Ins. Group et al. v. Floyd Nielsen et al.*, District Court, Clark County, Nevada, Case No. 06A517829 Jun. 13, 2011.  The Court may take judicial notice of court filings and other matters of public record.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir.2006).  Plaintiff also references this case and its outcome in its Motion to Dismiss PSI's consolidated action. *Panelized Structures, Inc. v. Liberty Mutual Ins. Group et al.*, No. 2:12-cv-00264-MMD-PAL, Dkt. No. 24.

1  contending that there are no issues of material fact and seeking judgment in its favor on

2  claims for contractual indemnification and equitable subrogation.[3]

3  **III.    DISCUSSION**

4       **A.    Legal Standard**

5       The purpose of summary judgment is to avoid unnecessary trials when there is

6  no dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,

7  18 F.3d 1468, 1471 (9th Cir.1994).  Summary judgment is appropriate when "the

8  pleadings, the discovery and disclosure materials on file, and any affidavits show there

9  is no genuine issue as to any material fact and that the movant is entitled to judgment

10 as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

11 330 (1986).  An issue is "genuine" if there is a sufficient evidentiary basis on which a

12 reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it

13 could affect the outcome of the suit under the governing law.  *Anderson v. Liberty*

14 *Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Where reasonable minds could differ on the

15 material facts at issue, however, summary judgment is not appropriate.  *Warren v. City*

16 *of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  "The amount of evidence necessary to

17 raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the

18 parties' differing versions of the truth at trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897,

19 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89

20 (1968)).  In evaluating a summary judgment motion, a court views all facts and draws all

21 inferences in the light most favorable to the nonmoving party.  *Kaiser Cement Corp. v.*

22 *Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

23       The moving party bears the burden of showing that there are no genuine issues

24 of material fact.  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In

25 order to carry its burden of production, the moving party must either produce evidence

26

27

28       [3]PSI does not contend that this action is barred by claim preclusion.  The Court
         therefore will not address this issue.

4

negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

### B.   Analysis

Because Plaintiff is contractually entitled under the Policy to assert ALFI's rights, Plaintiff argues that it can seek recovery under the indemnification provisions of the Agreement.  Plaintiff further argues that PSI is contractually obligated to indemnify ALFI for the insurance payments made to Mr. Novick.  Alternatively, Plaintiff argues that, even in the absence of contractual indemnity, it should be equitably subrogated to the position of ALFI to collect the payments made to Mr. Novick to avoid injustice.  The Court addresses each of these theories in turn.

### 1.  Contractual Indemnification

The Court need not reach the question of whether the Policy assigns ALFI's *contractual* rights to Plaintiff, because, by their terms, the indemnification provisions of the Agreement are not implicated.  Under Nevada law, an insurance policy "is enforced according to its terms to effectuate the parties' intent," *Burrows v. Progressive Casualty Ins.*, 820 P.2d 748, 749 (Nev. 1991), and "is to be judged from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain,

1    ordinary and popular sense," *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev.

2    1993) (*citing Nat'l Union Fire Ins. Co. v. Reno's Executive Air*, 682 P.2d 1380, 1382

3    (Nev. 1984)).   Additionally, when construing a contract, a court should consider the

4    contract as a whole and "should not interpret a contract so as to make meaningless its

5    provisions." *Phillips v. Mercer*, 579 P.2d 174, 176 (Nev. 1978). "[W]here a document is

6    clear and unambiguous on its face, the court must construe it from the language

7    therein." *S. Trust Mortg. Co. v. K&B Door Co., Inc.*, 763 P.2d 353, 355 (Nev. 1988).   A

8    contract is unambiguous if it is not susceptible to more than one interpretation. *See*

9    *Margrave v. Dermody Properties*, 878 P.2d 291, 293 (Nev. 1994).

10         Plaintiff argues that the language in the Agreement "unambiguously requires

11   Panelized Structures to indemnify ALFI against bodily injury claims resulting from

12   incidents involving Panelized Structures' equipment/machinery."   However, the plain

13   language of the Policy does not support Plaintiff's preferred construction.

14         First, the Court finds that Indemnification Provision II is clearly inapplicable.   Mr.

15   Novick's claims, for which Plaintiff seeks indemnification, are not for violations of OSHA

16   or a state workplace safety regulatory scheme.   Consequently, PSI's abidance by

17   workplace safety regulation is not at issue in this litigation.   In apparent recognition of

18   this, Plaintiff's argument strategically quotes Indemnification Provision II in the following

19   way:

20         The Company agrees to indemnify Allied Forces Temporary Services for
           any claims, penalties, or damages resulting from the . . . equipment to
21         which it assigns Allied Forces Temporary Services employees.

22   (Omissions in original) (dkt. no. 129 at 6).   Plaintiff's omission changes the meaning of

23   the sentence and is a misrepresentation of the contractual term.   Plaintiff's counsel is

24   admonished that such behavior constitutes an attempt to mislead the Court and will not

25   be tolerated.   Under the *actual* text of the Indemnification Provision II, ALFI has no claim

26   for indemnification against PSI because no claim for violation of OSHA or a similar

27   regulation was ever brought against ALFI.

28   ///

Second, Indemnification Provision I is similarly not implicated by the undisputed facts.  Indemnification Provision I unambiguously allocates the risks of any damages to PSI's equipment caused by ALFI's temporary workers to PSI by providing that ALFI did not insure such damages.  This provision further requires PSI to indemnify ALFI from any claim for injury resulting from incidents where one of ALFI's temporary workers damaged PSI's equipment or caused bodily injury.  It is undisputed that no claim for bodily injury was brought against ALFI as a result of the incident that led to payment of worker's compensation benefits to Mr. Novick.[4] Further, even if ALFI had paid for Mr. Novick's injuries,[5] ALFI had no indemnification damages to assert against PSI because ALFI would have been made whole under the Policy.  Because ALFI never paid anything on a claim for bodily injury, Indemnification Provision I was never implicated.

Further, considering the contract as a whole, this clear interpretation of Indemnification Provision I is also consistent with the other terms of the Agreement that require ALFI to provide worker's compensation insurance for the temporary employees assigned to work for PSI.  The Agreement unambiguously shifted the obligation of providing for worker's compensation coverage for the temporary employees to ALFI. The Agreement thus contemplates that where, as here, a temporary employee sustained an injury while working for PSI, the employee's injury would be covered and paid for under ALFI's worker's compensation policy. Interpreting Indemnification Provision I to require PSI to then indemnify ALFI for the worker's compensation benefits paid to the injured temporary worker, which ALFI was contractually bound to provide, would render the worker's compensation coverage provision meaningless. Consequently, Plaintiff's construction of Indemnification Provision I is contrary to

///

---

[4]In fact, worker's compensation benefits were Mr. Novick's exclusive remedy under Nevada's worker's compensation system.  *See* NRS 616A.020.

[5]From the facts it appears that the Novick's insurance claim was made directly to Plaintiff.

1   Nevada law and ALFI has no indemnification claim to assert against PSI under the

2   Agreement.

3                            **2.      Equitable Subrogation**

4          Equitable Subrogation is a doctrine "created to accomplish what is just and fair

5   as between the parties" arising "when one party has been compelled to satisfy an

6   obligation that is ultimately determined to be the obligation of another." *AT&T Tech., Inc.*

7   *v. Reid*, 855 P.2d 533, 535 (Nev. 1993) (citations omitted).  Equitable subrogation exists

8   independently of any contractual relation between the parties. *Id.* (*citing Memphis &*

9   *Little Rock R.R. v. Dow*, 120 U.S. 287, 301-02 (1887).  However, as statutory schemes

10  providing for subrogation have become prevalent, the doctrine of equitable subrogation

11  only operates in the absence of a statutory right. *See id.* at 535-36.

12         Here, Plaintiff has statutory subrogation rights under NRS 616C.215.

13  Accordingly, the doctrine of equitable subrogation is inapplicable.  Likewise, to the

14  extent Plaintiff is arguing that it should be equitably subrogated to the position of ALFI in

15  addition to its statutory subrogation to the position of Mr. Novick, it is unclear what

16  contractual rights ALFI has against PSI as explained in the previous section.

17         More importantly, under the "double recovery doctrine," a plaintiff can recover

18  only once for a single injury even if the plaintiff asserts multiple legal theories;

19  satisfaction of the plaintiff's damages for an injury bars further recovery for that injury."

20  *Elyousef v. O'Reilly & Ferrario, LLC*, 245 P.3d 547, 549 (Nev. 2010).  Plaintiff has

21  already prevailed on a suit for statutory subrogation.  Plaintiff's theory would allow them

22  to collect double damages, which certainly does not accomplish what is just and fair as

23  between the parties.

24         Accordingly, Plaintiff's Motion for Summary Judgment is denied. This conclusion,

25  however, leaves the claims suspended as resolution of Plaintiff's Motion results in a

26  finding against Plaintiff on its claims but PSI has not moved for summary judgment.[6]

27  _____

28         [6]The Court does not address PSI's Motion for Partial Summary Judgment (dkt.
    no. 181) at this time.

Federal Rule of Civil Procedure 56(f)(1) gives the court authority to grant summary judgment for a nonmovant "after giving notice and a reasonable time to respond." Therefore, the Court puts all parties on notice that it intends to grant summary judgment for PSI and the parties have fourteen (14) days from the date of this Order to file any response to the Court's stated intent.  If no responses are filed, the Court will enter an order of judgment for PSI.

**IV.    CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (dkt. No. 129) is DENIED and notice pursuant to Rule 56(f)(1) is provided above.

DATED THIS 25th day of March 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE